IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| KARIN GOTH-COSTNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 13 C 5984 |
| | ) | |
| CAROLYN W. COLVIN, | ) | Magistrate Judge |
| Acting Commissioner of | ) | Susan E. Cox |
| Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff has filed a motion for summary judgment seeking judicial review of a decision denying her application for Disability Insurance Benefits. Defendant seeks summary judgment to affirm the final decision. For the reasons provided, plaintiff's motion for Summary Judgment is granted [15] and defendant's Motion for Summary Judgment is denied [20].

## STATEMENT

Pursuant to 42 U.S.C § 405(g), plaintiff Karin Goth-Costner seeks judicial review of a decision denying her application for Disability Insurance Benefits ("DIB"). The parties have filed cross-motions for summary judgment. Plaintiff seeks a judgment reversing the final decision or remanding it for a new administrative hearing. Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security ("Commissioner"), seeks summary judgment to affirm the final decision. For the reasons provided, plaintiff's motion for Summary Judgment is granted [15] and defendant's Motion for Summary Judgment is denied [20]. This case is remanded to the Social Security Administration for further proceedings consistent with this opinion.

## I. PROCEDURAL HISTORY

Plaintiff filed for disability benefits on June 17, 2010, alleging disability beginning January 1, 2007.[1] The application was first denied on September 14, 2010, and again upon reconsideration on January 10, 2011.[2] Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ") and on October 25, 2011, appeared and testified at a hearing before ALJ Janice M. Bruning in Oak Brook, Illinois. James Breen appeared and testified at the hearing as a vocational expert.[3] On February 9, 2012, the ALJ issued an unfavorable decision.[4] On June 20, 2013 the Appeals Council denied Plaintiff's request for review.[5]

## II. FACTUAL BACKGROUND

Plaintiff was born on June 15, 1959 and was 54 years old at the time of the hearing. Plaintiff completed high school and obtained a cosmetology certificate, and worked as a hair stylist from November 1996 until August 2011. Plaintiff alleges disability due to neurofibromatosis type 1, a genetic disorder of the nervous system, muscles, bones and skin that causes the formation of multiple pedunculated soft tumors and café au lait spots.[6] Effects of neurofibromatosis range from hearing and cardiovascular complications to complications caused by tumor growth that compresses nerves.[7] In addition, plaintiff suffers from trigeminal neuralgia, a chronic pain condition that affects the trigeminal nerve, which carries sensation from the face to the brain.[8]

---

[1] R. at 57.
[2] R. at 57-58.
[3] R. at 20.
[4] R. at 20-29.
[5] R. at 1-3.
[6] Lippincott, Williams and Wilkins, <u>Professional Guide to Diseases</u> (8th edd. 2005).
[7] *Id.*
[8] (Citation needed, must secure medical dictionary)

Plaintiff has also been diagnosed with depression due to complications from her neurofibromatosis and trigeminal neuralgia.[9] Plaintiff shows records of treatment for neurofibromatosis going back to September 9, 1992, with two treating physicians, Ahmed Elborno, M.D., and Mehrukh Subhani, M.D.[10] Plaintiff was admitted to the hospital for pain twice in 2010.[11]

Plaintiff began seeing Dr. Elborno as her pain management specialist in 2004.[12] The records from October 2004 to November 2010 show consistent complaints of pain in the back, legs, face, neck, arms and hands.[13] Dr. Elborno ordered several MRI's during the course of treatment, including an initial test in October 2004, and another in April 2008, both indicating neurofibromas, which led to a diagnosis of multiple neurofibromatosis.[14] Plaintiff was prescribed a variety of oral and external patch pain medications such as Lidocaine, Fentanyl, Dilaudid and Hydromorphone, and eight nerve block treatments over that time period.[15]

Plaintiff also saw Dr. Subhani as her primary care physician, with treatment notes going back to April 2010, documenting complaints of pain and depression.[16] Dr. Subhani completed a psychiatric report in August 2010 for purposes of her disability application, indicating a diagnosis of neurofibromatosis, bilateral degenerative arthritis of the knees and depression, and that due to these factors plaintiff could not perform repeated

---

[9] R. at 257-59.
[10] R. at 231.
[11] R. at 263, R. at 449.
[12] R. at 255.
[13] R. at 233-55, 263, 308-10, 343-51, 369-79, 399, 409-12, 503-12, 1012.
[14] R. at 255, 351.
[15] R. at 253, 263, 307, 343, 503, 995, 1012, 1279.
[16] R. at 417-20, 512-17, 1322.

movements and had serious limitations to perform tasks on a sustained basis.[17] In a letter from October 2011, also for the purposes of her disability application, Dr. Subhani diagnosed plaintiff with neurofibromatosis and depression, opining that due to the high level of narcotic medications used to control chronic back, elbow and knee pain, that plaintiff was unable to work.[18]

For the purpose of her disability application, two non-treating, non-examining state agency physicians completed medical reviews of plaintiff. Vidya Madala, M.D., conducted a residual functional capacity assessment in which he found plaintiff "has the residual functional capacity for a range of medium work," citing "a lack of medical evidence of any neurological deficits."[19] Terry Travis, M.D., completed a psychiatric review of plaintiff, indicating that her depression was in remission and that her impairment was not severe, also indicating only mild restrictions of activities of daily living.[20]

In the decision given on February 9, 2012, the ALJ found that plaintiff had the following severe impairments: neurofibromatosis and trigeminal neuralgia.[21] The ALJ also found that the plaintiff had the nonsevere mental impairment of depression, which causes no more than mild limitation.[22]

### III. ANALYSIS

We find the two most relevant issues in this case are the ALJ's credibility determination of the plaintiff, and the weight afforded to treating physician Dr. Subhani.

---

[17] R. at 417-20.
[18] R. at 1322.
[19] R. at 25.
[20] R. at 421-31.
[21] R. at 22.
[22] R. at 23.

**A. Credibility**

We find that the ALJ did not sufficiently support her finding that plaintiff was "not persuasive."[23] The primary reason given for this finding was plaintiff's work as a hairdresser until August 2011, yet she alleged disability beginning in January 2007.[24] The ALJ points to plaintiff's inconsistent allegations of problems walking and lifting, noting she cared for her eighteen-month-old grandchild during this time.[25] The ALJ also discounted plaintiff's credibility because a doctor had released her to work following a gallbladder surgery.[26]

When reviewing a credibility assessment, special deference is afforded to the ALJ and her decision should not be disturbed unless it is patently wrong.[27] However, when making her decision, the ALJ "must consider a claimant's subjective complaint of pain if supported by medical signs and findings."[28]

First, we address plaintiff's employment as a hairdresser during the time she was already allegedly disabled. Plaintiff testified that during this period she worked only between three and nine hours a week at her job because her pain did not allow her to work longer.[29] It has been found that a person's part-time employment does not preclude him or her from being found disabled under social security regulation.[30] The difference between "being able to engage in sporadic physical activities and [plaintiff] being able to

---

[23] R. at 26.
[24] R. at 26.
[25] *Id.*
[26] *Id.*
[27] *Rice v. Barnhart,* 384 F.3d 363, 371 (7th Cir. 2004).
[28] *Clifford v. Apfel,* 227 F.3d 863, 871 (7th Cir. 2000).
[29] R. at 40.
[30] *Shauger v. Astrue*, 675 F.3d 690, 697 (7th Cir. 2012).

5

work eight hours a day five consecutive days of the week" is a critical one.[31] Plaintiff's attempt to continue engaging in work in this case seems to support, rather than detract, from plaintiff's credibility.[32] The ALJ does not address plaintiff's testimony as to her limited ability to work even part-time, other than to note that plaintiff worked "at or near substantial gainful activity at times."[33] Without an assessment of what plaintiff's condition was while she was still employed, we are not able to fully review the ALJ's determination.

Next, the commissioner argues that the ALJ "discussed [plaintiff's] activities of daily living, finding these activities to undermine her disability allegations."[34] The commissioner cites, however, to the ALJ's discussion only of plaintiff's depression, and does not indicate where or how the ALJ might have come to this conclusion regarding plaintiff's alleged neurofibromatosis and subjective complaints of disabling pain, which she is required to do.[35] The commissioner indicates that the ALJ suggested that "at times, the claimant is inconsistent with allegations of problems walking, standing, lifting and sitting," but the ALJ's decision does not provide what evidence was used to reach this conclusion other than vaguely referencing plaintiff's care for her eighteen month-old grandchild.[36] We agree this may indicate some inconsistency, but plaintiff also testified that she was forced to stop caring for her grandchild because of stairs at the child's house

---

[31] *Carradine v. Barnhart*, 360 F.3d 751, 755 (7th Cir. 2004).
[32] *Id.* (finding that while plaintiff testified against her own interest about her daily activities, this made her complaints of disabling pain more credible).
[33] R. at 26.
[34] Commissioner's Memo at 6.
[35] Commissioner's Memo at 6; r. at 23; s*ee also Clifford,* 227 F.3d at 871; SSR 88-13 (finding that the ALJ erred in discrediting plaintiff's testimony by citing contradictory activities of daily living, because the ALJ did not consider the plaintiff's subjective complaints of pain that were supported by medical signs and findings).
[36] Commissioner's Memo at 6; r. at 26.

and because she "couldn't carry him," which the ALJ did not address in her credibility finding.[37] Additionally, the record as a whole substantiated plaintiff's allegations of pain and problems resulting from its effects; plaintiff consistently sought medical attention for pain related to her neurofibromatosis throughout the period of alleged disability.[38] Without a more in-depth examination of the plaintiff's allegations of disabling pain as it exists within the record as a whole, there remains a disconnect in the ALJ's credibility determination of plaintiff.

Finally, the ALJ referenced plaintiff's 2011 gallbladder surgery and that she was released to work after the procedure. However, the doctor who performed the surgery was not a long term treating physician for plaintiff, and released plaintiff to work only in relation to the specifics of the plaintiff's gallbladder surgery.[39] This release to work does not refer to the lengthy history of issues relating to plaintiff's neurofibromatosis.

**B. Weight given to treating physician**

When attributing weight in her decision, the ALJ references two exhibits, a psychiatric report and a letter, both completed by plaintiff's treating physician Dr. Subhani. Both of these documents were completed for purposes of her disability application. Though not argued by plaintiff, the ALJ did not mention nor give any weight to treating pain specialist Dr. Elborno, whose treatment notes comprise a majority of the record regarding plaintiff's neurofibromatosis.

When assigning weight to the opinion of a treating physician, an ALJ must consider first if controlling weight is given to the opinion of the treating physician and, if

---

[37] R. at 48; *see Clifford,* 227 F.3d at 872 (finding that while plaintiff babysat for her grandchildren, she also testified that the activity made her condition worse, and therefore did not undermine claim of disability).
[38] R. at 233-55, 263, 308-10, 343-51, 369-79, 399, 409-12, 503-12, 1012.
[39] R. at 1134.

7

not, what weight should be given according to regulations.[40] These regulations include consideration of the length of the treatment relationship and frequency with which the patient is examined, supportability of the medical source through laboratory findings, and consistency with the findings of the record as a whole.[41] "An ALJ may discount a treating physician's medical opinion if it is inconsistent with the opinion of a consulting physician," however, when not affording a treating physician controlling weight, an ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."[42]

The August 2011 psychiatric report filled out by Dr. Subhani was given little weight, stating that it provides "no explanation of the evidence of mental impairments relied on in forming" the opinion.[43] The ALJ went on to state that the opinion is inconsistent with both the medical evidence in the record and plaintiff's work activity and activities of daily living.[44] The ALJ stated in her decision that the diagnosis in the psychiatric report was depression, but did not include that the report itself also listed neurofibromatosis as part of the diagnosis.[45] Where the ALJ's opinion regarding plaintiffs mental limitations are concerned, we find that the ALJ properly reduced the weight afforded to Dr. Subhani's opinion. However, this opinion is not limited to the medical impairment of depression alone, and lists substantial limitations due to pain,

---

[40] 20 CFR § 404.1527.
[41] 20 CFR § 404.1527 (c)(2)-(4).
[42] *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004); *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).
[43] R. at 26.
[44] *Id.*
[45] R. at 416.

including the inability to perform repeated movements, inability to tolerate stress, and limitations with the ability to perform tasks on a sustained basis.[46] An ALJ may not simply ignore entire lines of evidence that do not support her opinion or findings, and must "articulate at some minimal level [her] analysis of the evidence to permit an informed review."[47] The ALJ does not address any of the aspects related to disabling pain included in Dr. Subhani's opinion, or how those aspects are inconsistent with other opinions within the record or activities of daily living.

Turning to the second opinion given by Dr. Subhani, a letter dated October 1, 2011, the ALJ afforded no weight to the opinion given. She stated that the letter indicates plaintiff "cannot work because of pain, yet, she did work until August 2011."[48] Additionally, the ALJ concluded that Dr. Subhani did not "assess any work limitations nor cite any treatment notes to support the conclusion," adding that the opinion was inconsistent with other medical opinions which found no evidence of work-related limitations and with the claimant's activities of daily living.[49]

As we stated previously, the difference between "being able to engage in sporadic physical activities and [plaintiff] being able to work eight hours a day five consecutive days of the week" is a critical one.[50] While plaintiff did work part-time until August 2011, Dr. Subhani's opinion that plaintiff could not work due to disabling pain is dated October 2011, effectively two months after plaintiff stopped working.

---

[46] R. at 418-20.
[47] *Zurawski v. Halter,* 245 F.3d 881, 888 (7th Cir. 2001) (quoting *Clifford,* 227 F.3d at 872).
[48] R. at 26.
[49] *Id.*
[50] *Carradine v. Barnhart*, 360 F.3d at 755.

9

In her decision, the ALJ stated that Dr. Subhani did not assess any work limitations,[51] however the letter specifically states that the "patient is suffering from diffuse neurofibromatosis… due to neurofibromatosis, (patient) is suffering from chronic back pain, elbow pain and knee pain. Due to high levels of pain, patient is on high dose of narcotics to control her pain. Due to above conditions, patient is disabled and unable to work."[52] We note that Dr. Subhani's statement that plaintiff is on high doses of narcotic pain medications may easily be construed as a work related limitation.[53] Furthermore, given the substantial number of visits with treating pain management specialist Dr. Elborno (twenty-three indicated within the record), Dr. Subhani's opinion that plaintiff suffers from chronic pain is well supported by evidence in the record, yet the ALJ failed to address this evidence in her weight determination.[54]

The ALJ next found that Dr. Subhani's opinion was not supported by treatment notes.[55] While Dr. Subhani does not specifically cite treatment notes, the record is replete with references to neurofibromatosis and the years of treatment plaintiff has undergone for related symptoms.[56] The ALJ must investigate all avenues available that relate to pain, including information and observations by treating physicians, examining physicians, and third parties.[57] Dr. Subhani's representation within the record is narrow, and we find that her opinion alone would constitute a reasonable argument for a reduced weight determination. However, this is not the case, and the ALJ's assertion that this

---

[51] R. at 26.
[52] R. at 1322.
[53] R. at 253, 263, 307, 343, 503, 995, 1012, 1279.
[54] R. at 233-55, 263, 308-10, 343-51, 369-79, 399, 409-12, 449, 503-12, 1012.
[55] R. at 26.
[56] R. at 233-55, 263, 308-10, 343-51, 369-79, 399, 409-12, 503-12, 1012.
[57] SSR 88-13.

opinion is inconsistent with others in the record is not adequately addressed by the ALJ in her decision, especially where it relates to Dr. Elborno.

Finally, the only evidence cited to by the ALJ references reports completed by non-treating, non-examining state physicians.[58] The record itself appears to contain substantial evidence supporting Dr. Subhani's opinion relating to pain caused by neurofibromatosis, including Dr. Elborno's treatment notes and nerve block procedures as well as treatment notes from plaintiff's two hospitalizations due to severe facial pain from trigeminal neuralgia and neurofibromatosis.[59] The Commissioner argues that the ALJ properly relied on the opinions of the state agency physician Dr. Madala after discounting the medical opinions of Dr. Subhani.[60] However, without the ALJ addressing specifically how Dr. Subhani's opinion is inconsistent with the record as a whole, of which Dr. Elborno's treatment notes make up the largest part, we find the weight determination in favor of only the opinions of non-examining, non-treating doctors in error.

## IV.   CONCLUSION

For the reasons provided, plaintiff's motion for Summary Judgment is granted [15] and defendant's Motion for Summary Judgment is denied [20].

Date:   11/18/14

U.S. Magistrate Judge

---

[58] R. at 26 (exhibits 9F, 10F, 15F, and 16F).
[59] R. at 233-55, 263, 308-10, 343-51, 369-79, 399, 409-12, 449, 503-12, 1012.
[60] Commissioner's Memo at 10.